IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
On Remand From the Tennessee Supreme Court
On May 21, 2018

## STATE OF TENNESSEE v. STEPHANO LEE WEILACKER

**Appeal from the Circuit Court for Montgomery County**
**No. 40700673        William R. Goodman, III, Judge**

_____

### No. M2016-00546-CCA-R3-CD

_____

Following a jury trial in the Montgomery County Circuit Court, Defendant, Stephano Lee Weilacker, was found guilty of especially aggravated kidnapping and aggravated robbery for his role in a criminal episode at the Triangle Kwick Stop (Triangle Market) in Montgomery County. He received an effective sentence of twenty years to be served consecutively to a sentence received for another aggravated robbery. This is the fourth time the direct appeal has been before this court. Per the order of the Tennessee Supreme Court granting Defendant's Tennessee Rule of Appellate Procedure 11 application, we address three issues in this opinion: (1) plenary review of Defendant's assertion that his motion to suppress evidence should have been granted by the trial court, (2) plenary review of Defendant's issue that he is entitled to a new trial because of improper closing arguments by the prosecutor; and (3) plain error review of Defendant's issue wherein he asserts that the trial court caused a reversible constructive amendment to the especially aggravated kidnapping count, and that there was a fatal variance between the proof and the allegations in the indictment. Following a thorough review, we reverse the judgments and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. TIMOTHY L. EASTER, J., concurring in part and dissenting in part.

Richard C. Strong, Nashville, Tennessee, for the appellant, Stephano Lee Weilacker.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Appellate Procedural History**

The first time that Defendant's convictions were reviewed by this court, it was held that: (a) the evidence was sufficient to support the convictions; (b) the sentencing was proper; and (c) Defendant's issue that the trial court failed to properly charge the jury concerning lesser included offenses was only entitled to plain error review because the motion for new trial was not timely filed. Because Defendant failed to include the jury charge in the appellate record, plain error review was not available. The supreme court denied Defendant's application for permission to appeal. *State v. Stephano L. Weilacker*, No. M2010-00497-CCA-R3-CD, 2011 WL 743416 at *1, 6 (Tenn. Crim. App. Mar. 3, 2011), *perm. app. denied* (Tenn. July 18, 2011) (*Weilacker I*).

Subsequently, Defendant filed a post-conviction petition, and was granted a delayed appeal to allow him to file a timely motion for new trial to include issues that were previously waived due to the untimely filing of the initial motion for new trial. *State v. Stephano L. Weilacker*, No. M2013-01532-CCA-R3-CD, 2014 WL 4402123 at *2 (Tenn. Crim. App. Sept. 8, 2014), *perm. app. granted* (Tenn. Crim. App. judgment vacated, remanded for further proceedings) (Tenn. Jan. 20, 2015) (*Weilacker II*). Despite being granted a second chance to present issues for plenary review, Defendant did not file a motion for new trial. However, he raised several issues for plenary review: (a) the evidence was insufficient to support the convictions; (b) consecutive sentencing was improper; (c) the trial court erred by denying his motion to suppress evidence; (d) the State committed prosecutorial error by making an improper argument to the jury during its final closing argument; and (e) the trial court erred by failing to instruct the jury pursuant to *State v. White*, 362 S.W.3d 559 (Tenn. 2012). *Id*. This court again affirmed the convictions but, as noted above in the case history in the citation, the supreme court vacated the judgment and remanded for further proceedings in the trial court, specifically for Defendant's trial counsel to file a proper motion for new trial.

After denial of the motion for new trial, Defendant again appealed to this court, and the convictions were affirmed. The supreme court granted Defendant's application to appeal from this court's judgment. *State v. Stephano Lee Weilacker*, No. M2016-00546-CCA-R3-CD, 2017 WL 6210857 (Tenn. Crim. App. Dec. 8, 2017), *perm. app. granted* (remanded to the Court of Criminal Appeals for reconsideration of three issues) (Tenn. May 21, 2018) (*Weilacker III*).

**Facts**

On June 30, 2006, two young men entered the Triangle Market in Montgomery County. Brandi Perry, the store clerk, was in the back and heard the "door open" buzzer. She went to the front to be available for the customer(s). Frank Lavarre, a vendor, was present stacking the products he distributed. One of the young men had a semi-automatic pistol pointed at Mr. Lavarre when Ms. Perry came up front. The gun was then pointed at Ms. Perry, and she and Mr. Lavarre were ordered to get behind the counter. Mr. Lavarre was ordered to get on the floor. Ms. Perry obeyed the perpetrators' order to hand over money. Cigarettes under the counter were also taken. As the young men were leaving the store with the money and cigarettes, the man with the gun shot Mr. Lavarre in the leg as he lay on the floor. The bullet passed through one leg and entered and lodged in his other leg. Defendant was never inside the Triangle Market during the incident. Neither Ms. Perry nor Mr. Lavarre saw the two young men leave the premises in a vehicle. Neither observed Defendant outside the building.

Sandra Lewis was driving by the Triangle Market on her way to a Food Lion store when she observed two young African-American men running from around the front of the store and enter the back seat of a "white American car" parked on the south side of the Triangle Market. The young men were laughing. One had a bandana in his hand. The car pulled in behind Ms. Lewis's vehicle as it proceeded toward the Food Lion store for approximately 5 - 10 minutes while she drove 55 m.p.h. The white car had four occupants – the two young men and two African-American men in the front seat. The driver's physical description given by Ms. Lewis was "large." The car was driven erratically as it followed Ms. Lewis. She continuously looked in her rearview mirror at what she described as the suspicious vehicle behind her. When she stopped to turn left into the Food Lion, the other vehicle drove past her at a high rate of speed. Due to the suspicious nature, she wrote down what she thought was on the license plate, 375 LMG, and called 911 to report what she had observed. She testified that, at the time, she had no idea that the Triangle Market had been robbed.

In addition to Defendant, David Selby was also indicted for aggravated robbery of Ms. Perry and especially aggravated kidnapping of Mr. Lavarre. Mr. Selby testified for the State in Defendant's trial pursuant to his agreement to testify truthfully in exchange for a fully suspended eight-year sentence. Mr. Selby testified that he had known Defendant for a few months prior to the June 30, 2006 incident at the Triangle Market. On that day, Defendant picked up Mr. Selby to go buy some fireworks and just drive around. When Mr. Selby got into Defendant's car, there were two "young dudes" riding in the back seat. Mr. Selby was 17 years old at the time.

According to Mr. Selby, Defendant drove out into the unincorporated area of Montgomery County. He added that it was Defendant's idea to commit robbery at the Triangle Market. Just after driving by the Triangle Market, Defendant asked the two

"young dudes" if they wanted to make some money. After they responded yes, Defendant drove to a barnyard and gave instructions to the "young dudes" on what to do at the Triangle Market. Defendant then drove back to the market and parked his car on the side of the building. The young men left the vehicle after masking their faces with bandanas and later returned with money and cigarettes. While they were going through the items, Defendant and Selby stated they wanted their shares of the proceeds. Defendant also said that he should get more money because he was driving.

Mr. Selby testified that the pistol used in the robbery of the Triangle Market, recovered three days later in Defendant's car when Defendant and Mr. Selby were pulled over by police, had Mr. Selby's fingerprints on it. Mr. Selby explained the only reason his fingerprints were on it was because Defendant tossed it into Mr. Selby's lap when they were stopped by the police. Mr. Selby handed it back to Defendant, telling him it was Defendant's gun.

Mr. Selby added that the pistol was already in Defendant's car when Mr. Selby got into the car on the day of the robbery at the Triangle Market. Mr. Selby did not know who put the pistol inside the vehicle, and he did not testify where the pistol was located when he first saw it. He also did not explicitly state that Defendant handed the pistol to one of the young men who went inside the Triangle Market.

Clarksville police officer Scott Beaubien testified that while on duty on July 3, 2006, he stopped Defendant's vehicle. Defendant was the driver, and Mr. Selby and another man were passengers. He saw and seized a model L22 .22 caliber Lorcin pistol, visible partly under the arm rest in the front seat.

Investigator Joshua Wall, of the Montgomery County Sheriff's Department, went to the Triangle Market after the robbery. In his capacity as a crime scene technician, he found the empty shell casing ejected from the pistol when Mr. Lavarre was shot.

T.B.I. agent Steve Scott, assigned to the firearms identification unit, testified that he examined the pistol seized from Defendant's car and the shell casing found at the Triangle Market. He concluded that the pistol was in proper working order and that the cartridge found at the crime scene had been fired from the pistol found in Defendant's car three days after the Triangle Market robbery.

Investigator Jeff Morlock, of the Montgomery County Sheriff's Office, was the primary investigator of the crimes at the Triangle Market. He initially received only "a vague description of the vehicle" used by the perpetrators, described as a silver Thunderbird. Actually, the vehicle driven by Defendant was a white Grand Marquis. No fingerprints were found at the scene although the shell casing found there was sent to the crime lab. Investigator Morlock received a video from the Triangle Market that showed the crimes being committed. Investigator Morlock agreed that Defendant never entered

the store during the commission of the offense. On cross-examination, Investigator Morlock clarified that once he had the opportunity to interview Sandra Lewis, who had observed the vehicle containing the actual perpetrators follow her on the highway, he knew that a silver Thunderbird was not involved in the crimes. He knew Defendant's vehicle was the one involved.

Defendant's proof consisted solely of playing the video from the Triangle Market showing commission of the crimes as proof that he was not present inside the store when the crimes were committed.

## Analysis

We did not order additional briefing by the parties following our supreme court's remand for consideration of the issues specified above. Neither party sought permission to file additional briefs. Therefore, as applicable, we will rely on the arguments in the original briefs.

## (1) Motion to Suppress

### *Facts presented at suppression hearing*

The suppression hearing involved Defendant's being taken into custody for two aggravated robberies, one of which is not involved in the instant appeal. On July 3, 2006, Officer Beaubien was on patrol. He received a dispatch that an aggravated robbery had occurred at the J & D Flea Market. The vehicle used by the perpetrator was described as a white Mercury Grand Marquis, and the vehicle's complete license plate number was also provided. Approximately one hour and twenty minutes later, Officer Beaubien saw the vehicle described in the dispatch, and he began to follow it. The vehicle turned into a driveway at a residence. When backup officers arrived, they "did a felony traffic stop."

Using the PA system on his patrol car, Officer Beaubien ordered the three persons inside the Mercury Grand Marquis to raise their hands, then the officers got them out of the vehicle.

Defendant was the vehicle's driver, David Selby was in the back seat, and Jacobi Allen was in the front passenger seat. After all occupants were removed from the Grand Marquis, Officer Beaubien walked around the vehicle and looked inside it while standing by the driver's side window. From that location, he could see the handle of a pistol that was partially located underneath the armrest on the front seat. The pistol, a Lorcin .22 caliber pistol, was seized as evidence.

Proof at trial of the seizure of the pistol was consistent with testimony at the suppression hearing, with the addition of admission of a photograph of the pistol underneath the armrest as observed by the officer from outside the vehicle.

In its order denying the motion to suppress, the trial court made factual findings that: Defendant was driving a white Grand Marquis with a license plate that matched the getaway car from an aggravated robbery occurring on July 3, 2006, approximately one hour and twenty minutes before it was observed and followed by Officer Beaubien; when the Grand Marquis pulled into a driveway, Officer Beaubien ordered the driver and passengers to raise their hands; the occupants of the Grand Marquis were removed from the vehicle; Defendant was the driver of the Grand Marquis; Officer Beaubien walked around the vehicle and observed the .22 caliber pistol under the armrest; and the weapon was seized after it was observed in "plain view" by Officer Beaubien from the outside of the vehicle.

Our interpretation of the trial court's conclusions of law follows:

(1)     Officer Beaubien had probable cause to believe that the vehicle had been used in an aggravated robbery on July 3, 2006, a short time before Officer Beaubien initiated the stop;

(2)     Officer Beaubien had probable cause to believe Defendant and the others had been involved in the aggravated robbery on July 3, 2006;

(3)     Officer Beaubien therefore had probable cause to arrest Defendant;

(4)     Officer Beaubien seized the pistol lawfully because he was permitted to seize items from the vehicle reasonably related to the aggravated robbery for which Defendant had been arrested;

(5)     In any event the pistol was observed in "plain view" inside the vehicle stopped based upon probable cause that the vehicle was used in an aggravated robbery.

Contrary to the evidence and to the trial court's findings of fact and conclusions of law, Defendant asserts in his brief that the stop was merely a "brief investigatory detention." Defendant argues that the officers lacked probable cause to arrest Defendant. Furthermore, Defendant asserts that even if the officers had probable cause to arrest Defendant, once all the occupants had been removed from the vehicle, the officers no longer had authority to conduct a warrantless search incident to arrest. Defendant relies on *Arizona v. Gant*, 556 U.S. 332 (2009). The State asserts that the motion to suppress was properly denied. We agree with the State.

It is necessary to elaborate on the facts for the purpose of clarification. The aggravated robbery for which Defendant was convicted in the case *sub judice* was committed on June 30, 2006, at the Triangle Kwick Stop in Montgomery County, outside of the city limits of Clarksville. The aggravated robbery which led directly to Defendant's arrest as reflected in the proof during the suppression hearing occurred on the day of Defendant's arrest, July 3, 2006, at the J & D Flea Market within the city limits of Clarksville in Montgomery County. Defendant never mentions in his appellate brief what item(s) was unlawfully seized from the vehicle he was driving, but our review of the record leads us to the conclusion that he is referring only to the model L22 Lorcin .22 caliber pistol, which was admitted as evidence at trial in the case *sub judice*.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. A warrantless search or seizure "is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). The recognized exceptions to the requirement include (1) a search incident to an arrest, (2) the plain view doctrine, (3) a consent to the search, (4) a "*Terry*" stop and frisk, and (5) the existence of exigent circumstances. *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007). "[T]he 'plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." *Washington v. Chrisman*, 455 U.S. 1, 5-6, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982). "The plain view doctrine is applicable when (1) the object seized was in plain view, (2) the viewer had a right to be in the position to view the object, and (3) the incriminating nature of the object was immediately apparent." *Id.* (citing *State v. Cothran*, 115 S.W.3d 513, 524-25 (Tenn. Crim. App. 2003)). Defendant acknowledges that *Gant* allows the search of a vehicle even if the occupant(s) is out of the vehicle if "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

In this case, Officer Beaubien was aware that an aggravated robbery had occurred at the J & D Flea Market, and the car that Defendant was driving matched the description of the vehicle that was used by the perpetrators of the armed robbery. After Officer Beaubien and other officers stopped the vehicle, and all occupants were removed, Officer Beaubien walked around the car and looked inside while standing by the driver's window. He could see the handle of the pistol located partially underneath the armrest on the front seat. The pistol was in plain view from outside the vehicle where Officer Beaubien had the right to be, and the incriminating nature of the weapon was clear because there was probable cause to believe that the vehicle was involved in an armed robbery. Therefore, the pistol was lawfully seized, and Defendant is not entitled to relief on this issue.

**(2) Improper Jury Argument by Prosecutor**

Defendant argues that the prosecutor committed two types of prohibited arguments to the jury: (1) by arguing facts not in evidence when he stated that the license plate on Defendant's car "matched" the license plate on the vehicle stopped by Officer Beaubien; and (2) by vouching for the credibility of Mr. Selby.

We can dispense with the first ground with minimal discussion. Defendant references four pages in the record to support his assertion that the prosecutor erroneously argued facts not in evidence. All four pages show that the prosecutor stated that Ms. Lewis's testimony regarding the numbers and letters on the vehicle she observed was only one letter different than the license tag on Defendant's vehicle, which was clearly shown in a photograph admitted as an exhibit at trial. We could not find any argument by the prosecutor on the pages referenced in Defendant's brief that "the license plate on [Defendant's] car matched the license plate of the vehicle stopped by [Officer] Beaubien." However, even if the prosecutor did make that argument, it was absolutely correct, as evidenced by the photograph of Defendant's car made an exhibit at trial.

Thus, Defendant is not entitled to relief on this first ground, however, for the reasons stated herein, Defendant is entitled to relief as a result of the prosecutor's vouching for the credibility of Mr. Selby.

It is improper for a prosecutor to "engage in derogatory remarks, appeal to the prejudice of the jury, misstate the evidence, or make arguments not reasonably based on the evidence." *State v. Bates,* 804 S.W.2d 868, 881 (Tenn. 1991). In *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003), this court outlined "five general areas" of erroneous arguments:

> (1) intentionally misleading or misstating the evidence;
> (2) expressing a personal belief or opinion as to the truth or falsity of the evidence or defendant's guilt;
> (3) making statements calculated to inflame the passions or prejudices of the jury;
> (4) injecting broader issues than the guilt or innocence of the accused; and
> (5) intentionally referring to or arguing facts outside the record that are not matters of common public knowledge.

"In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." *State v. Pulliam*, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996). In connection with this issue, we must also examine the following factors:

(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case[;]
(2) the curative measures undertaken by the court and the prosecution[;]
(3) the intent of the prosecutor in making the statement[;]
(4) the cumulative effect of the improper conduct and any other errors in the record[; and]
(5) the relative strength or weakness of the case.

*Id*. at 368 (quoting *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)). Even if a prosecutor's comments, however, are found to be improper, whether the misconduct amounts to reversible error depends on whether the comments had a prejudicial effect on the jury. *State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999).

It is improper for a prosecutor to assert his or her personal opinion as to the credibility of a State's witness. *See Thornton*, 10 S.W.3d at 235. "Whether a statement qualifies as misconduct often depends on the specific terminology used." *Id.* Words such as "I submit" before the prosecutor's challenged observation are not the equivalent of a personalized opinion. *Id.* (quoting *United States v. Stulga*, 584 F.2d 142, 147 (6th Cir. 1978)). By telling the jury that the State's crime lab does an "excellent job" and that he was "very proud of our crime lab," the prosecutor improperly expressed his personal opinion as to the credibility of that portion of the State's proof. *Id*.

We choose not to use the term "prosecutorial misconduct" to describe errors by counsel for the State in making arguments to the jury. Instead, we will use "improper prosecutorial argument" for non-constitutional errors. For the reasons stated in the dissent in *State v. Timothy McKinney*, No. 2016-00834-CCA-R3-CD, 2018 WL 1055719 (Tenn. Crim. App. Feb. 23, 2018), Woodall, dissenting, and in the concurring opinion in *State v. Maurice Baxter aka Maurice Gross*, No. W2016-01088-CCA-R3-CD, 2018 WL 3860079 (Tenn. Crim. App. Aug. 10, 2018) Woodall, concurring, we believe that the use of the term "prosecutorial misconduct" alludes to a violation of the rules of professional conduct which govern the conduct of all Tennessee attorneys. *See also State v. Jackson*, 444 S.W.3d 554 (Tenn. 2014). (The term "unconstitutional prosecutorial comment" is used to describe prosecutor argument which is non-structural constitutional error, and "improper prosecutorial argument" is used to describe prosecutor argument that does not violate the United States or Tennessee Constitutions. *Id*. at 591-92 n.50). Our court's decisions on legal issues involving jury trials should not be interpreted as a conclusion that any attorney has violated any rule of professional conduct. That issue is not before us in appeals involving criminal cases.

The prosecutor's argument which is the subject of this issue was made during the final closing arguments to the jury and is as follows:

Mr. Selby, reason to lie?  You heard me question Mr. Selby on parole, **he knows the penalty of perjury.  He knows what is going to happen to him by me if he gets up there and feeds me a bunch of bologna.  He has every reason to tell the truth, because he don't want to go back to where he was.  That's the truth.  He doesn't want to go back there.  That's why he told the truth.**  But giving the Defense Counsel his credit, yes, **he [Mr. Selby] is the only one that puts [Defendant's] identification at the scene, sure.  He is in the car.  To receive the benefits.  All that.  Identifies the vehicle, the gun** - - I brought it out on direct examination the fact that his fingerprints were on that weapon.  He told you how that came about.  That when the police flashed their blue lights, he was going to pull them over, uh-oh - - here, you take the gun, you're a juvenile.  That's how it went down.  Those are the facts of this case, Ladies and Gentlemen.  That is not me putting a spin on it, that is exactly what came out of the box.  That's the evidence.  Not what we want it to be.  Mr. Selby didn't say he was the last person in the car.  Coming back out of the store.  Defense Counsel knows that.  I brought it out on direct - - he was the last one to get in the car.  The other two juveniles were already there when they picked him up.  So the gun was already there in the car, because it was Mr. Weilacker's gun.  He stayed in the vehicle during the robbery.  (emphasis added)

As noted above, it is improper prosecutorial argument for "the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).  Clearly, the prosecutor erred by plainly expressing his opinion, saying Mr. Selby "told the truth" in his testimony.  The prosecutor further expressed his opinion as to Mr. Selby's giving true testimony by personalizing and placing his own credibility in favor of the State's evidence, by saying:  "[Mr. Selby] knows the penalty of perjury.  [Mr. Selby] knows what is going to happen to him if he gets up there and feeds me a bunch of bologna."  Essentially, the prosecutor told the jury that he (the prosecutor) guaranteed the testimony of Mr. Selby was truthful because Mr. Selby knew the prosecutor's threat to send Mr. Selby back to prison if Mr. Selby did not tell the truth.

Having determined that error occurred, we must determine whether it is reversible error.  The erroneous argument does not arise to the level of any constitutional violation.  Accordingly, the question to be resolved is whether Defendant has met the burden to prove prejudice, i.e., the error "more probably than not affected the judgment or would result in prejudice to the judicial process."  Tenn. R. App. P. 36(b); *State v. Jackson*, 444 S.W.3d 554, 591-92, n. 50 (Tenn. 2014).

The State seems to assert on appeal that the argument made by the prosecutor in violation of *Goltz* was nonetheless permissible by a statement of defense counsel during

- 10 -

his closing argument. Specifically, the State argues that the prosecutor's argument was in response to the following made by the defense counsel:

> Then we have the testimony of Mr. Selby. Mr. Selby is an admitted accomplice. He was here testifying he said, as a part of his plea agreement. He was on parole. So he has every reason to color his testimony to help himself. He has an interest that goes beyond the facts that are the facts of this circumstance. And he, while on the stand, admitted to you in an event that was unrelated to the events of June 30th, 2006. He was in the vehicle that was stopped when [Defendant] and him were arrested.

Defense counsel did not make any improper statements. He argued what the proof showed without stating his personal opinion as to the veracity of Mr. Selby. Rebuttal of an argument made by defense counsel is not an exception to the *Goltz* prohibitions. If the State feels that defense counsel has made an improper argument, the remedy is an objection, not a free pass to make an argument prohibited by *Goltz*.

As to the determination of whether the prosecutorial error is reversible error or harmless error, we first examine the theory of defense set forth by defense counsel in his closing argument. Primarily, he pointed out missing and inconsistent evidence and argued that there was therefore reasonable doubt of Defendant's guilt. Specifically, he argued that facts presented at trial questioned Mr. Selby's credibility. Importantly, defense counsel also argued that Mr. Selby's testimony was the only evidence offered to prove Defendant's guilt by criminal responsibility for the acts of other persons.

In the State's final closing argument, shortly after making the statements which we conclude constitute improper prosecutorial argument, the State argued that Mr. Selby's testimony was the only direct evidence which identified Defendant as being guilty by criminal responsibility. This acknowledgement was repeated just after making the improper prosecutorial argument. Importantly, the prosecutor also argued that the lesser included offense of facilitation of each felony did not apply. He argued,

> Facilitation is that you have no intent and you don't benefit. You just know they are going to do it and then you give them a little assistance afterwards.

> The facts do not fit facilitation. Receive the benefit - - asked for more money because he was the driver and it was his job. That knocks facilitation out. He is criminally responsible for sending these two juveniles in this store with a weapon.

- 11 -

Facilitation is defined as follows, "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403. Criminal responsibility, under T.C.A. § 39-11-402(2), is, "Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids or attempts to aid another person to commit the offense."

Mr. Selby's testimony was the sole evidence that Defendant expected a share of the proceeds from the aggravated robbery and actually wanted extra money because he was the driver. Though not specifically argued by the State on this point, Mr. Selby's testimony was the only proof that Defendant came up with the idea of robbing the Triangle Market, planned the incident, and explained to the perpetrators on how to commit the robbery.

In fact, without Mr. Selby's testimony and taken in the light most favorable to the State, the evidence would show that Defendant's car was used to transport the two criminal actors to the Triangle Market, and the vehicle was used as the getaway car. Three days later, the pistol used in the aggravated robbery and especially aggravated robbery at the Triangle Market was found in possession of Defendant inside his vehicle. Defendant was not in the store during commission of the crimes, and no person identified him as being inside his vehicle, much less driving it, except Mr. Selby.

It is clear that Mr. Selby's testimony was absolutely crucial to support the State's theory that Defendant was guilty of the offenses under the theory of criminal responsibility for the conduct of another person. Defense counsel made an appropriate jury argument as to why Mr. Selby's testimony against Defendant was not credible.

The State prosecutor made a prohibited argument directly giving his opinion that Mr. Selby told the truth in his testimony. He reinforced his statement that Mr. Selby told the truth by telling the jury that if Mr. Selby told the prosecutor a "bunch of bologna" the prosecutor would personally send Mr. Selby back to prison. It is clear to us that acceptance or rejection of Mr. Selby's testimony by the jury was the difference between a finding of guilt by criminal responsibility or guilt of the lesser included offense of facilitation, respectively. Under the circumstances of the closing arguments made by both parties, and the obvious importance of Mr. Selby's testimony to the State, we conclude the erroneous prosecutorial argument more probably than not affected the verdict based upon the *Pulliam* factors listed above. We have discussed the erroneous argument in context with the facts and circumstances set forth by the evidence, and no curative measures were undertaken by the trial court or the prosecutor. On its face, it is obvious the prosecutor's intent was to give the jury the prosecutor's personal belief that Mr. Selby's testimony was true. There is no "cumulative effect" because we have found

- 12 -

no other errors, but the weakness of the State's case to prove Defendant's guilt by criminal responsibility if the jury did not believe Mr. Selby's testimony is obvious – as stated, there would be no evidence of criminal responsibility. Four of the five factors weigh heavily toward reversible error. Consequently, the judgments must be reversed and the cases remanded for a new trial.

We feel it is appropriate to address the portion of Judge Easter's separate opinion which dissents from our conclusion that Defendant is entitled to a new trial. We thoroughly analyzed Mr. Selby's testimony and the prosecutor's acknowledgement of the importance of Mr. Selby's testimony to establish Defendant's guilt of the offenses pursuant to the theory of criminal responsibility. ("[Mr. Selby] is the only one that puts [Defendant's] identification at the scene, sure. He [Defendant] is in the car. To receive the benefits. All that.") It is clear that even the State knew that the jury had to believe the accomplice Mr. Selby in order to return a verdict of guilt of Defendant by criminal responsibility. It is just as clear that the prosecutor's strong personal endorsement of Mr. Selby's truthfulness is reversible error under *Goltz* and *Pulliam*.

Additionally, we conclude that this court's ruling in *Weilacker I* that the evidence presented at trial was legally sufficient to support the convictions is not relevant to consideration in this case of whether the prosecutor's error is reversible error. In *Weilacker I*, Defendant's challenge to the sufficiency of the evidence was specifically "that the accomplice testimony of Mr. Selby was not sufficiently corroborated." *Weilacker I*, 2011 WL 743416, at *4. Only "a modicum of evidence" is required to corroborate an accomplice's testimony. *Id.* With all due respect to the panel which reviewed this case in *Weilacker I*, our careful review of the testimony compels us to conclude that mistakes were made by the *Weilacker I* panel in its recitation of the facts constituting corroboration. In any event, testimony which can accurately establish corroboration in this case is not strong enough to result in the prosecutor's error being harmless error. Especially when, as noted above, the prosecutor told the jury that Mr. Selby's testimony is the **only** evidence that put Defendant at the scene, in the car, to receive the benefits, and "all that."

## (3) Reversible Constructive Amendment to Especially Aggravated Kidnapping Count and/or Fatal Variance

As per the Tennessee Supreme Court's order on remand, we review this issue by conducting a plain error review. Defendant asserts in the heading to this issue in his brief that "The trial court permitted a reversible constructive amendment to the indictment when it did not charge especially aggravated kidnapping as it was alleged in the indictment."

In his argument on this issue, Defendant states that either there was a fatal variance between the proof and the allegations in the especially aggravated kidnapping

count *or* the trial court erred by making a constructive amendment to that count of the indictment.

The especially aggravated kidnapping count of the indictment alleges:

> **COUNT 2:**
> And the Grand Jurors aforesaid, upon their oath aforesaid, do further present and say that on the date aforesaid, and in the State and County aforesaid, JACOBI K. ALLEN, [DEFENDANT] and DAVID A. SELBY unlawfully, feloniously and knowingly did remove or confine Frank Provost Lavarre by the use and display of a handgun which is a deadly weapon, *to facilitate the commission of a felony, Aggravated Robbery*, and *did cause said victim to suffer serious bodily injury* by shooting him in the legs, in violation of TCA 39-13-305 and against the peace and dignity of the State of Tennessee.

(emphasis added)

Therefore, Count 2 of Defendant's indictment charged three separate offenses, one charge of especially aggravated kidnapping by use of a deadly weapon, one charge of especially aggravated kidnapping by causing the victim to suffer serious bodily injury, and one charge of aggravated kidnapping committed by facilitating commission of a felony.

Pertaining to Count 2 of the indictment, the trial court included in its charge to the jury the following information concerning what the jury was required to find beyond a reasonable doubt in order to return a verdict of guilty of especially aggravated kidnapping by use of a deadly weapon or lesser included offenses thereof:

**COUNT TWO**

**ESPECIALLY AGGRAVATED KIDNAPPING**

Any person who commits an especially aggravated kidnapping is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant or another for which the defendant is criminally responsible knowingly removed or confined Frank Provost Lavarre unlawfully so as to interfere substantially with his liberty;

and

(2) that the confinement or removal was accomplished with a deadly weapon or by display of any article used or fashioned to lead the alleged victim to reasonably believe it was a deadly weapon.

A removal or confinement is "unlawful" if it is accomplished by force.

## FACILITATION OF ESPECIALLY AGGRAVATED KIDNAPPING

Any person who commits the offense of facilitation of a felony is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant knew that another person intended to commit the specific felony of especially aggravated kidnapping, but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense;

and

(2) that the defendant furnished substantial assistance to that person in the commission of the felony;

and

(3) that the defendant furnished such assistance knowingly.

Elements of Especially Aggravated Kidnapping are listed above.

## AGGRAVATED KIDNAPPING

## (COUNT TWO – LESSER INCLUDED)

Any person who commits an aggravated kidnapping is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant or another for which the defendant is criminally responsible knowingly removed or confined Frank Provost Lavarre unlawfully so as to interfere substantially with his liberty;

and

(2) that the alleged victim suffered bodily injury.

## FACILITATION OF AGGRAVATED KIDNAPPING

Any person who commits the offense of facilitation of a felony is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant knew that another person intended to commit the specific felony of aggravated kidnapping, but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense;

and

(2) that the defendant furnished substantial assistance to that person in the commission of the felony;

and

(3) that the defendant furnished such assistance knowingly.

Elements of Aggravated Kidnapping are listed above.

As is apparent, the trial court did not charge the jury with the alternative statutory basis for especially aggravated kidnapping alleged in the indictment, i.e., causing the victim to suffer serious bodily injury. As applicable here, the offense of especially aggravated kidnapping can be committed under four different theories, two of which are: (1) false imprisonment, as defined in T.C.A. § 39-13-302, accomplished with a deadly weapon, T.C.A. § 39-13-305(a)(1), and (2) false imprisonment, as defined in T.C.A. §

- 16 -

39-13-302, where a victim suffers serious bodily injury. T.C.A. § 39-13-305(a)(4). False imprisonment is defined as unlawfully and knowingly removing or confining another person so as to substantially interfere with the other person's liberty. T.C.A. § 39-13-302(a).

Aggravated kidnapping can be committed under five separate theories, *see* T.C.A. § 39-13-304, one of which is by "false imprisonment, as defined in § 39-13-302, committed: (1) to facilitate the commission of any felony or flight thereafter." T.C.A. § 39-13-304(a)(1).

This issue first arose from the discussion of the trial court and the attorneys for Defendant and the State concerning the jury charges to be given, including appropriate lesser included offenses. When the trial court asked the parties what lesser included offenses they thought should be charged under the especially aggravated kidnapping count, the prosecutor immediately answered,

> THE COURT: What about the especially aggravated kidnapping?
>
> [PROSECUTOR]: I think the State would submit aggravated kidnapping under the theory [to] facilitate any felony or flight thereafter, I think that is established by the - - I think the testimony indicated that after the two individuals had already taken the cash and the other items and on the way out is when they shot Mr. La[v]arre, certainly not in the perpetration of the robbery to gain the items, but after the items were already gained in order to effectuate flight under the Statute.

Of course, as noted above, the lesser included offense suggested by the State was already specifically alleged in the wording of the indictment. The trial court responded to the State's suggestion by rejecting the suggested theory of the lesser included offense of aggravated kidnapping suggested by the prosecutor. No mention was made by the trial court at this point of the specific allegation set forth in the indictment that the false imprisonment element was committed to facilitate the commission of the felony of aggravated robbery. The trial court, *sua sponte*, did rule that the State only proved "bodily injury" and failed to prove "*serious* bodily injury," therefore failing to prove beyond a reasonable doubt guilt of especially aggravated kidnapping by causing serious bodily injury to the victim, Mr. Lavarre.

The trial court then asked defense counsel as to what lesser included offenses to Count 2 should be charged to the jury. Defense counsel's response, and the remainder of discussions concerning the jury charges is as follows:

> [DEFENSE COUNSEL]: I follow the Court's logic on that. I think the statutory language as charged is slightly different from 39-13-

305, but that those are - - it was bodily injury, not serious bodily injury, so therefore, a lesser-included would be aggravated kidnapping and - - well, false imprisonment would automatically have to be included also, Your Honor. Whether or not then to go from false - - from aggravated kidnapping to false imprisonment, that's a judgment call. I think that Your Honor's selection then of the charge aggravated kidnapping and - - should include the false imprisonment also.

THE COURT: Well, I don't believe that the evidence - - you know, totally uncontroverted evidence goes past aggravated kidnapping. I think the evidence clearly shows that if there was a removal or confinement, it was by the use and display of a handgun. I am going to charge the a lesser of aggravated kidnapping, I believe that is - - the one I am going to charge is one that is - - causes bodily injury. Let me make sure - - the two elements then are that the Defendant knowingly removed or confined another unlawfully so as to interfere substantially with the other's liberty and two would be that the alleged victim suffered bodily injury. So - - those are - - I do not believe kidnapping or false imprisonment are raised by the evidence presented.

I will be including the charge - -

[PROSECUTOR]: Your Honor, if I may recap count one is the aggravated robbery and facilitation charge?

THE COURT: Correct.

[PROSECUTOR]: And Count two, we do have especially aggravated robbery based on - -

THE COURT: Kidnapping.

[PROSECUTOR]: Kidnapping based on the display and use of a deadly weapon?

THE COURT: Yes.

[PROSECUTOR]: And then an aggravated kidnapping based on the bodily injury element.

THE COURT: Correct.

[PROSECUTOR]: Are we doing facilitation of those two?

- 18 -

THE COURT:  Yes.

[PROSECUTOR]:  Thank you, Your Honor.

THE COURT:  I will be charging criminal responsibility for the conduct of another and expert testimony - - identity, we need to put in. Any other requested jury instructions?

(NO AFIRMATIVE RESPONSE INDICATED)

THE COURT:  If you want to wait around about thirty minutes, and I will have the jury instructions or they will be on your table in the morning?

[PROSECUTOR]:  I will be here.  The State has nothing else to offer as far as other instructions.

THE COURT:  Anything else, [defense counsel]?

[DEFENSE COUNSEL]:  No, Your Honor, not at this time.

THE COURT:        All right.

(WHEREUPON, Court was adjourned)

After all of this, and as evidenced by the jury charge on Count 2, the trial court charged especially aggravated kidnapping by false imprisonment accomplished with a deadly weapon as alleged in Count 2, and aggravated kidnapping committed by false imprisonment where the victim suffered bodily injury, a lesser included offense of especially aggravated kidnapping by causing the victim to suffer serious bodily injury. Facilitation of each of these offenses was also in the jury charge.

As stated above, the trial court implicitly entered a judgment of acquittal as to the charged offense of especially aggravated kidnapping where the victim suffered serious bodily injury.  The verdict returned by the jury as to Count 2 was that Defendant was guilty of especially aggravated kidnapping by false imprisonment where the offense was accomplished by use of a deadly weapon.  The aggravated kidnapping charge, a lesser included offense of the other theory of especially aggravated kidnapping, false imprisonment where the victim suffered serious bodily injury, was not mentioned by the jury or either counsel, or the trial court before the jury was discharged and court was adjourned.

- 19 -

As we have stated, our review of Defendant's indictment issue must be done under plain error review. In Tennessee, issues which are waived by failure to properly be included in a timely motion for new trial; not assigned as error on appeal; when counsel fails to make a contemporaneous objection when the issue arises; or when counsel fails to file a required pre-trial motion to address an issue, can still be addressed in proper circumstances by "plain error review." *State v. Walls*, 537 S.W.3d 892, 901 (Tenn. 2017).

However, as stated in *Walls*, relief can be granted for plain error only if *all* of the following factors are present:

(a)     the record clearly establishes what occurred in the trial court;

(b)     a clear and unequivocal rule of law has been breached;

(c)     a substantial right of the accused has been adversely affected;

(d)     the accused did not waive the issue for tactical reasons; and

(e)     consideration of the error is "necessary to do substantial justice."

*Id*. (quoting *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016).

"To rise to the error of plain error, '[a]n error would have to [be] especially egregious in nature, striking at the very heart of fairness of the judicial proceeding.'" *State v. Banks*, 271 S.W.3d 90, 127 (Tenn. 2008) (quoting *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006)).

The cause of all the problems related to this issue is the State's drafting of Count 2 as an impermissible duplicitous count in the indictment. Count 2 alleges that Defendant committed false imprisonment, by unlawfully and knowingly removing and confining the victim, *and* (pick your choice) accomplished it by use of a deadly weapon (especially aggravated kidnapping); in order to facilitate commission of aggravated robbery of a person other than the victim (aggravated kidnapping); and, caused the victim to suffer serious bodily injuries (a type of especially aggravated kidnapping different than the first charge of especially aggravated kidnapping). These three charges should have been set forth in three separate counts of the indictment. *State v. Gilliam*, 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995); *State v. Angela E. Isabell*, No. M2002-00584-CCA-R3-CD 2003 WL 21486982, at *3 (Tenn. Crim. App. June 27, 2003); *State v. Michael Burnette*, No. E2005-00002-CCA-R3-CD, 2006 WL 721306, at *3 (Tenn. Crim. App. Mar. 26, 2006); and   Tenn. R. Crim. P. 8(a)(1),(b).

- 20 -

A panel of this Court recently set forth the reasons why duplicitous indictments are not permissible, with the caveat that failure to challenge such indictments before trial results in waiver of the issue:

> "[A]ll crimes arising from the same incident that are not lesser included offenses of another crime charged in the indictment must be charged in separate counts." *State v. Gilliam*, 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995); *see State v. Angela E. Isabell*, No. M2002-00584-CCA-R3-CD (Tenn. Crim. App. June 27, 2003). The prohibition against duplicitous indictments is to ensure a defendant is provided adequate notice of the allegations, to prevent a violation of double jeopardy principles, and to ensure a unanimous jury verdict. *State v. Michael Burnette*, No. E2005-00002-CCA-R3-CD, 2006 WL 721306, at *3 (Tenn. Crim. App. Mar. 26, 2006), *perm. app. denied* (Tenn. Sept. 5, 2006). However, Tennessee Rule of Criminal Procedure 12(b)(2)(A) requires a defendant to file a motion alleging non-jurisdictional indictment defects, including duplicity, before the trial, and this court has concluded that failure to allege a duplicitous indictment before the trial results in waiver of appellate review. *See Michael Burnette*, 2006 WL 721306, at *3; *State v. Donald Richardson*, No. 87-192-III, 1988 WL 52670, at *1 (Tenn. Crim. App. May 24, 1988).

*State v. Duran Maszae Lee*, No. E2017-00368-CCA-R3-CD, 2018 WL 934534, at *4 (Tenn. Crim. App. Feb. 16, 2018), *perm. app. denied* (Tenn. June 6, 2018).

A variance occurs "when the evidence at trial does not correspond to the offense alleged in the charging instrument." *State v. Eric Lebron Hale*, M2011-02138-CCA-R3-CD, 2012 WL 3776673, at *9 (Tenn. Crim. App. Aug. 31, 2012)(citing *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). However, before a variance is fatal, it must be material and prejudicial. *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984).

The State proved two of the three charges in Count 2, and a lesser included offense of the third charge. Ultimately, Defendant was not prejudiced by the trial court's failure to charge the specifically alleged offense of aggravated kidnapping and also by the failure of the jury to render a verdict on the charged lesser included offense of aggravated kidnapping where the victim suffers bodily injury. Therefore, no fatal variance occurred, there is no basis for plain error relief, and Defendant is therefore not entitled to relief on this theory.

However, Defendant does not argue that he was improperly tried on a duplicitous indictment. He asserts instead that there was a fatal variance, and the trial court erred by constructively amending the indictment by deleting the charge of especially aggravated kidnapping by causing serious bodily injury to the victim or, in the alternative, the trial

court erred by not granting a judgment of acquittal as to any charge of especially aggravated kidnapping in Count 2.

Defendant argues that the State was required to prove *both* theories of guilt as to especially aggravated kidnapping in order for him to be convicted of the offense of especially aggravated kidnapping in Count 2. He alleges that once the trial court determined that the State failed to present evidence to prove the essential element of *serious* bodily injury to the victim, then because the language in the indictment required proof of both use of a deadly weapon *and* serious bodily injury, he could not be convicted. We disagree. The language of Count 2 improperly included three separate criminal charges. The two separate charges of especially aggravated kidnapping did not "morph" into one charge of especially aggravated kidnapping. Therefore, three of the five factors for granting plain error review in this portion of his indictment issue do not exist: the record does not show that a clear and unequivocal rule of law has been breached; there is no substantial right of Defendant that has been adversely affected; and there is no need to do substantial justice because there was no error by the trial court charging the jury with the offense of especially aggravated kidnapping by use of a deadly weapon. Therefore, Defendant is not entitled to relief by "plain error" as to the theory the trial court erred by not dismissing the charges in Count 2 by the State's failure to prove serious bodily injury to the victim.

Addressing the issue of whether the trial court erred by making a constructive amendment to the indictment, we conclude that the trial court did err, but Defendant is unable to show that a substantial right of his has been adversely affected as is required by plain error relief factor (c).

A brief recap of what occurred at trial is appropriate. The trial court properly charged the jury to consider the charge of especially aggravated kidnapping by use of a deadly weapon. The trial court also properly charged facilitation of this theory of especially aggravated kidnapping. Next, the trial court charged the jury with the lesser included offense of aggravated kidnapping by causing bodily injury. The trial court should have charged this as a lesser included offense of the charge of especially aggravated kidnapping by causing *serious* bodily injury (which the trial court had effectively dismissed because of a failure of proof) but no distinction was made. The trial court never asked the jury whether they reached a verdict on that charge. Neither party asked the trial court to do so. This indicates to us that everyone in the courtroom erroneously treated the charge of aggravated kidnapping by bodily injury as a lesser included offense of especially aggravated kidnapping by use of a deadly weapon and *not* as a lesser included offense of especially aggravated kidnapping by causing *serious* bodily injury.

The trial court clearly erred, however, by constructively amending the indictment by not charging, and therefore deleting, the aggravated kidnapping charge wherein the

crime was accomplished to facilitate commission of the felony of aggravated robbery. By not giving the jury instructions to consider this theory of aggravated kidnapping, the trial court deleted that portion of Count 2 and therefore amended the indictment without the consent of Defendant after jeopardy had attached. A panel of this Court has recently opined,

> Tennessee Rule of Criminal Procedure 7 bars amendment of an indictment after jeopardy has attached without the defendant's consent. Tenn. R. Crim. P. 7(b)(2). Black's Law Dictionary defines amendment as "[a] formal and usually minor revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument; specifically, a change made by addition, *deletion*, or correction[.]" Amendment, *Black's Law Dictionary* (10th ed. 2014) (abbreviations omitted and emphasis added). Additionally, this Court has held that the deletion of words from an indictment is an amendment. *See Lindsey*, 208 S.W.3d at 439 (holding that the trial court erred in allowing the State to amend the indictment to delete the phrase "and or deliver"). By dismissing "part of the indictment," the trial court essentially "deleted" the portion of the indictment that used the word "domestic" and the citation to the domestic assault statute. Defendant did not consent to the amendment. Thus, the trial court erroneously amended the indictment.

*State v. Dexter Octavius Parker*, No. M2017-00477-CCA-R3-CD, 2018 WL 3154342, at *12 (Tenn. Crim. App. June 26, 2018).

Defendant has not argued that he was deprived of having the jury consider aggravated kidnapping accomplished to facilitate commission of the felony of aggravated robbery, even though as an aside he claims it "is a method of committing the lesser[]included offense of aggravated kidnapping as defined" by T.C.A. § 39-13-304. Elsewhere, Defendant acknowledges in his brief that "the State made three specific allegations in the indictment that would have to have been proven at trial to support the crime charged." This concession leads to the conclusion that Defendant asserts that the aggravated kidnapping as alleged in Count 2 may be a less *serious* offense but not a lesser *included* offense.

Nevertheless, we conclude that Defendant is not entitled to relief under plain error review as a result of the trial court's erroneous amendment of the indictment. We have already determined that there was not a fatal variance between the proof and the indictment which would mandate reversal of his conviction of especially aggravated kidnapping by use of a deadly weapon.

The erroneous amendment to the indictment affected only the charge of aggravated kidnapping. By not charging that offense to the jury, it was implicitly

- 23 -

dismissed by the trial court, after jeopardy had attached, and therefore, Defendant cannot be tried on that offense again.  *North Carolina v. Pearse*, 395 U.S. 711, 717 (1969).

Therefore, Defendant has not shown that a substantial right of his was adversely affected, and also consideration of the error is not necessary to do substantial justice.

## CONCLUSION

For the reasons stated herein, the judgments are reversed and remanded for a new trial.

_____
THOMAS T. WOODALL, JUDGE